# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CELESTE R.**[1], <br><br>   Plaintiff, <br><br>  v. <br><br>**NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, <br><br>   Defendant. | Case No. 3:17-cv-0951-SI <br><br> **OPINION AND ORDER** |

Lisa R.J. Porter, JP Law PC, 5200 SW Meadows Road, Suite 150, Lake Oswego, OR 97035. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Heather L. Griffith, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

  Plaintiff Celeste R. ("Plaintiff") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying Plaintiff's application for Disability

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision denying Plaintiff's application for DIB is REVERSED and REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born in 1986. AR 23. In 2013, she achieved a bachelor's degree in sociology. AR 46. Plaintiff worked as a cashier, floor salesman, and co-manager of a pizza restaurant. AR 47-48. She filed for DIB on December 3, 2013, alleging disability beginning August 29, 2013, due to irritable bowel syndrome ("IBS"); Crohn's disease; ulcers; rectal bleeding; abdominal pain; and fatigue. AR 174.

Plaintiff's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). AR 38. An administrative hearing was held on December 15, 2015. AR 39. Plaintiff was represented by counsel and testified. *Id.* On January 26, 2016, the ALJ issued a written decision denying Plaintiff's application. AR 11-24. The Appeals Council denied Plaintiff's subsequent request for review, making the ALJ's decision final. AR 1-3. Plaintiff seeks judicial review of that decision.

### B. Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after August 29, 2013, the alleged disability onset date. AR 13. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: inflammatory bowel disease and "disorder of the female genital organs." *Id.* The ALJ also found that Plaintiff's anxiety disorder and affective disorder were non-severe impairments. AR 13-14.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 15. The ALJ next addressed Plaintiff's RFC. The ALJ found that Plaintiff had the capacity to perform light work, except that she:

> could occasionally lift and carry 20 pounds. She could frequently lift and carry 10 pounds. She could sit, stand, and walk for six hours each in an eight-hour workday. She could occasionally climb ramps and stairs. She could never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch,

5- Opinion and Order

and crawl. She should avoid concentrated exposure to hazards such as unprotected heights and moving mechanical parts. She required work that could be performed in close proximity to a restroom.

AR 15.

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a cashier/checker, assistant retail manager, or retail sales clerk. AR 22-23. At step five, the ALJ found that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including mailroom sorter, office helper, and route clerk. AR 23-24. Therefore, the ALJ concluded that Plaintiff was not disabled.[2] AR 24.

## DISCUSSION

Plaintiff argues that the ALJ erred by (A) rejecting Plaintiff's subjective symptom testimony; (B) incorrectly evaluating the medical opinion evidence; (C) giving little weight to the lay witness testimony of Plaintiff's husband; and (D) incorrectly evaluating Plaintiff's RFC.

### A. Plaintiff's Subjective Symptom Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

---

[2] The ALJ also found that Plaintiff's marijuana use was a non-contributing factor to the disability determination. AR 24.

6- Opinion and Order

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.' " *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

On December 10, 2013, Plaintiff completed an Adult Function Report stating that she suffered from constant pain and fatigue. AR 195. Plaintiff contended her pain and fatigue restricted her activities to one and one-half hour increments and necessitated two to three hours of rest after each period of activity. *Id.* Plaintiff also noted that she required frequent trips to the restroom. *Id.* Plaintiff's daily routine revolved around taking naps, taking painkillers, intermittently performing minor chores, reading, playing computer games, and watching movies. AR 196, 199. Plaintiff stated that she required painkillers and medical marijuana to accommodate daily activities of personal care, which rendered Plaintiff unable to drive. AR 197-98. Plaintiff alleged that her condition negatively affected her ability to socialize with others, and

further alleged that her conditions affected her ability to lift, squat, bend, stand, reach, walk, sit, climb stairs, complete tasks, and concentrate. AR 200. She noted that she handled stress poorly, and estimated that she could walk about 100 feet before requiring one hour to rest. AR 200.

Plaintiff testified at the administrative hearing on December 15, 2015. AR 41. She stated that travel was difficult because she could not drive, and using public transportation was a "scary proposition" because it lacked easy access to a restroom. AR 45. She judged that she required access to a restroom every 40 minutes. AR 46. Plaintiff looked for part-time work after her alleged disability onset date but faced significant barriers to employment, namely, her frequent doctors' appointments and inability to travel far from home. AR 50-51. Similarly, Plaintiff noted that pain and fatigue, resulting from digestive distress, rendered her unemployable. AR 51-52. Plaintiff stated that, on a day with particularly bothersome symptoms, she was unable to stand long enough to remove a pot from the stove due to lightheadedness, nausea, and weakness. AR 57.

The ALJ found Plaintiff's subjective testimony partially credible. Preliminarily, the ALJ observed that Plaintiff's impairments were controllable with medication. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("impairments that can be controlled effectively with medication are not disabling"). The ALJ noted that Plaintiff's digestive impairments improved significantly while taking various medications, including: Asacol in January 2014; Pentasa and Prednisone from April 2014 to June 2015; and dicyclomine in May 2015. AR 378, 462, 638, 640. The record demonstrates, however, that while Plaintiff experienced some initial relief from taking medication, the beneficial effects eventually ceased.

Plaintiff stopped taking Asacol because she could not afford it. In August 2015, Plaintiff noted that while dicyclomine initially helped, her symptoms had returned. AR 635. Indeed, in

December 2015, Plaintiff reported that she continued to suffer daily onsets of diarrhea every one to three hours, despite her medications. AR 710. At the appointment, treating provider Victoria LaPorte, FNP, noted that Plaintiff had lost 25 pounds since February, appeared sleepy, and exhibited slowed movement and speech. AR 713. Additionally, Plaintiff's treating providers eventually stopped prescribing Prednisone and Pentasa because it was unclear whether Plaintiff suffered from Crohn's disease or IBS. AR 634. Thus, the record demonstrates that Plaintiff experienced some relief from medication, but continued to exhibit symptoms consistent with her testified limitations. These symptoms included weakness, fatigue, and frequent trips to the restroom. Because the ALJ erred in finding Plaintiff's symptoms were well-controlled by medication, that rationale was not clear and convincing.

The ALJ noted that Plaintiff was not always a reliable historian. *See Reddick v. Chater*, 157 F.3d 715, 723-24 (9th Cir. 1998) (affirmative evidence of malingering is required to reject a plaintiff's subjective testimony). Treating provider Mallory McNicholas, P.A., noted that "[a]t times it is difficult to get an accurate history from [Plaintiff], [because] details are sometimes not consistent with prior statements," and treating provider FNP LaPorte stated that it was "unknown" if Plaintiff was a malingerer. AR 376, 705. The ALJ's proffered rationale, however, does not satisfy the clear-and-convincing standard required to reject a Plaintiff's subjective testimony. It is unsurprising that Plaintiff gave an inconsistent medical history to P.A. McNicholas considering Plaintiff was consuming large amounts of marijuana and painkillers at the time because she had been admitted to the emergency room only one week earlier for a particularly severe flare-up of her condition. AR 345, 373-76. It is well known that marijuana may inhibit coherent thinking, and indeed, the record reflects that Plaintiff experienced side effects from her marijuana treatments. For example, she testified at the hearing that she could not

drive because the amount of marijuana she consumed "[made] driving unwise." AR 44. The Court does not accept a single equivocal notation as affirmative, clear, and convincing evidence of malingering. Furthermore, FNP LaPorte's opinion that it was "unknown" whether Plaintiff was a malingerer is equivocal, and thus does not provide a legally sufficient reason to discredit Plaintiff's testimony. Arguably, FNP LaPorte credited Plaintiff's subjective complaints, because she opined that Plaintiff suffered from disabling physical impairments. Therefore, the ALJ erred.

Next, the ALJ rejected Plaintiff's subjective testimony because she did not always follow treatment recommendations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (an ALJ may discredit a plaintiff's subjective testimony due to an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"). Plaintiff admitted that she was not always compliant with her diet and ate "the wrong foods intermittently." AR 534. The Court declines, however, to uphold the ALJ's rejection of Plaintiff's subjective testimony due to her occasional failure to follow a strict diet regimen. In *Orn v. Astrue*, the Ninth Circuit noted that when a claimant failed to follow a prescribed treatment plan while alleging disabling pain, the ALJ had ample evidence that the claimant was exaggerating their pain. *See* 495 F.3d 625, 637-38 (9th Cir. 2007). "[S]uch failure may be probative of credibility, because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief." *Id.* In contrast, the Ninth Circuit also noted that "in the case of impairments where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful," using a plaintiff's failure to follow a treatment regimen to impugn their testimony "makes little sense." *Id.* Although Plaintiff admitted to occasionally failing to follow her diet, the record also shows that she aggressively pursued other treatment options. Plaintiff reliably took her medications,

including Cholecalciferol, mesalamine, St. John's Wort, evening primrose oil, hyoscyamine sulfate, and iron supplements, and regularly attended medical appointments. AR 373, 379, 417, 458, 466, 535. She saw specialists, and underwent invasive procedures, including colonoscopies, endoscopies, biopsies, CT scans, and capsule endoscopies, to diagnose her digestive issues. AR 352, 364, 367, 370, 448. She presented to the emergency room on two occasions during the adjudicatory period, and was given heavy doses of medications to relieve her digestive symptoms. AR 337, 344. Additionally, Plaintiff repeatedly attempted to self-correct her diet, which did not noticeably improve her symptoms. For instance, Plaintiff tried the Fontenot diet, a gluten-free diet, a liquid diet, and eliminated certain foods that allegedly triggered her symptoms. AR 59-60, 396, 635, 710. In the face of Plaintiff's aggressive pursuit of treatment options, it "makes little sense" for the ALJ to reject her subjective testimony based on an occasional failure to follow her diet. Therefore, the ALJ did not provide clear and convincing reasons to reject Plaintiff's testimony.

### B. Medical Opinions

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). An ALJ may reject a medical opinion based primarily on a claimant's subjective statements where the ALJ found those statements not credible. *See Morgan* 169 F.3d at 602; *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

11- Opinion and Order

Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan* 169 F.3d at 595.

1. **Dr. Taylor and LPC Corvelli**

Plaintiff's counselor, Jill Corvelli, LPC, and supervising psychologist Laura Taylor, PsyD., completed a mental RFC assessment on November 9, 2015. AR 701. LPC Corvelli, and Dr. Taylor, diagnosed Plaintiff with generalized anxiety disorder, and stated that she exhibited symptoms consistent with anhedonia, appetite disturbance with weight change, generalized persistent anxiety, psychomotor agitation, apprehensive expectation, substance dependence, and emotional withdrawal. AR 694-95. LPC Corvelli opined that Plaintiff was moderately limited in activities of daily living and maintaining social functioning, and often experienced deficiencies in concentration, persistence, and pace. AR 700. LPC Corvelli also noted, however, that Plaintiff would have no difficulty engaging with members of the public, supervisors, or co-workers if she was fully employed. AR 698.

The ALJ gave great weight to the opinion of LPC Corvelli and Dr. Taylor. The ALJ rejected, however, the section stating that Plaintiff exhibited moderate difficulties with activities of daily living, social functioning, and concentration, persistence, and pace. AR 21. The ALJ found that Plaintiff had mild difficulties in those functional areas. AR 21. Plaintiff does not explicitly argue that the ALJ erred in rejecting the moderate degrees of limitation in activities of daily living, social functioning, and concentration, persistence, and pace. Plaintiff instead argues that the ALJ erred because none of the limitations espoused by LPC Corvelli and Dr. Taylor appear in Plaintiff's RFC. The limitations outlined in the opinion are mild, however, with no restrictions assessed as to Plaintiff's ability to interact with the public, supervisors, or co-workers; and no limitations assessed as to her ability to understand and remember short and

12- Opinion and Order

simple instructions, carry out very short and simple instructions; work in coordination with others, make simple work-related decisions, ask simple questions; accept instructions and respond to criticism, get along with co-workers, or respond to changes in the work setting. AR 699. Indeed, in the opinion section titled "mental abilities and aptitudes needed to do unskilled work," there are no limitations outlined at all.[3] AR 699.

In light of the mild, or absent, limitations given by LPC Corvelli and Dr. Taylor, the Court interprets Plaintiff's argument as claiming that the ALJ erred in rejecting the treating providers' assessed moderate limitations in the areas of activities of daily living, social functioning, and concentration, persistence, and pace. Although Plaintiff did not explicitly argue against the ALJ's opinion that Plaintiff was mildly limited in the above functional areas, she linked the treating providers' assessed moderate limitations to FNP LaPorte's opinion, discussed below. The ALJ rejected the assessed moderate limitations to activities of daily living, social functioning, and concentration, persistence, and pace, because they were "not supported with explanation[s] or reference[s] to signs, symptoms, or objective findings." AR 21.

A brief review of the treating providers' notes lends credence to the ALJ's interpretation of the record. Plaintiff reported that she avoided public situations due to past humiliations related to her condition and LPC Corvelli observed that Plaintiff was "very frenetic" at the beginning of one session. AR 667, 737. Nonetheless, there was very little evidence of moderate limitations. As such, the ALJ's interpretation of the record is rational and must be upheld. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (the court must uphold the ALJ's rational interpretation of the record "where the evidence is susceptible to more than one rational interpretation").

---

[3] In several sections, LPC Corvelli and Dr. Taylor simply wrote "unknown" as to their opinion of Plaintiff's functioning.

13- Opinion and Order

### 2. FNP LaPorte

Social Security Rule ("SSR") 06-03p[4] in effect at the time Plaintiff filed her claim defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p. Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). The ALJ may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Because FNP LaPorte is a nurse practitioner, she is considered an "other" medical source for the time period relevant to Plaintiff's claim.

FNP LaPorte, Plaintiff's treating provider since November 2013, completed an assessment of Plaintiff's RFC on December 2, 2015, diagnosing her with IBS, celiac disease, history of myocardial infarction, and history of colitis and rectal bleeding. AR 704. FNP LaPorte observed that Plaintiff exhibited symptoms such as constant, severe abdominal pain, diarrhea,

---

[4] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR-06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medial opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

14- Opinion and Order

and weakness, and opined that Plaintiff would miss work more than four times per month. AR 704, 708. She also opined that Plaintiff's symptoms were severe enough to frequently interfere with her attention and concentration, but noted that Plaintiff had no limit on her ability to stand, walk, or sit during a normal eight hour workday. AR 705-06. As discussed above, FNP LaPorte stated that it was "unknown" if Plaintiff was a malingerer. AR 705. Ultimately, FNP LaPorte opined that Plaintiff had been unable to work since the alleged disability onset date "due to constant, chronic diarrhea, [and] weakness." AR 704.

      The ALJ gave little weight to FNP LaPorte's opinion, noting that Plaintiff's condition improved "once an appropriate treatment regimen was implemented." AR 21. The ALJ also found that FNP LaPorte "was not sure if the claimant was malingering," and P.A. McNicholas found it difficult to develop an accurate history of Plaintiff due to inconsistent statements. AR 21. The Court, however, disavowed such reasoning in evaluating Plaintiff's subjective symptom testimony, observing that Plaintiff's medications provided only temporary relief before her symptoms returned. The Court also observed that notations supplied by P.A. McNicholas and FNP LaPorte were equivocal and, therefore, legally insufficient to support a finding of malingering. The Court adopts such reasoning here as well: the ALJ's proffered reasons are not germane to rejecting the opinion of FNP LaPorte.

      The ALJ also gave little weight to FNP LaPorte's opinion because she "did not link the claimant's symptoms to specific functional limitations. Instead, she merely cited diarrhea and weakness and concluded the claimant cannot work." AR 21. FNP LaPorte's opinion, however, evinces specific functional limitations linked to Plaintiff's impairments. For instance, FNP LaPorte noted that Plaintiff's constant diarrhea caused fatigue and weakness such that Plaintiff would experience substantial difficulty maintaining the energy to work a full eight hour

day, and further noted that Plaintiff frequently experienced symptoms that would interfere with her attention and concentration. AR 704-05. Additionally, FNP LaPorte opined that Plaintiff would be absent from work at least four days per month due to her impairments—bbased on the testimony of the VE, such a restriction would render Plaintiff unemployable. AR 71, 708. Furthermore, because FNP LaPorte opined that Plaintiff experienced chronic, unpredictable diarrhea every one to three hours, it logically follows that Plaintiff would be required to take more breaks than the average employee. The VE opined that a hypothetical employee requiring at least two additional, non-standard, breaks would not be competitively employable. AR 70-71. Thus, the ALJ erred in stating that FNP LaPorte did not connect Plaintiff's impairments to specific functional limitations.

Plaintiff also argues the ALJ erred by giving great weight to the non-examining agency physician, Dr. Robert Vestal, M.D. The ALJ found Dr. Vestal's opinion was supported by the record as a whole. AR 21. In light of the ALJ's legally insufficient rejection of Plaintiff's subjective symptom testimony and FNP LaPorte's opinion, the ALJ's interpretation of the record is tenuous at best. On remand, the ALJ should re-evaluate whether Dr. Vestal's opinion is consistent with the record as a whole, once the errors described herein are addressed.

## C. Lay Witness Testimony

The Commissioner may "use evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work," including from relatives. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[R]egardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms

16- Opinion and Order

and daily activities are competent to testify as to [his or] her condition.' " *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)). But "evidence that a specific spouse exaggerated a claimant's symptoms in order to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony." *Id.*

Thomas R., Plaintiff's husband, completed a letter outlining Plaintiff's impairments. AR 332. He noted that Plaintiff was constantly in pain, had difficulty standing for longer than 20 minutes, could not cook a full meal, and occasionally required help bathing. *Id.* Additionally, he observed that Plaintiff had stopped playing the flute and violin since her symptoms worsened, and that Plaintiff suffered from anxiety at the thought of eating or leaving the house. *Id.* Thomas R. also noted that while Plaintiff's condition had improved slightly after the alleged disability onset date, her conditions had not improved in the year and a half immediately preceding November 23, 2015, the date he wrote the letter. *Id.*

The ALJ gave only partial weight to Thomas R.'s statement, noting that it was unsupported by the record as a whole. The ALJ stated, again, that Plaintiff's conditions improved with medication. AR 22. As previously discussed, that finding is not supported by the full longitudinal record. The ALJ also noted that FNP LaPorte opined that Plaintiff was not limited in her ability to stand, walk, or sit throughout the workday, in contrast to Thomas R.'s statement that Plaintiff could not stand longer than 20 minutes. AR 22. FNP LaPorte also stated, however, that Plaintiff required bathroom breaks every one to three hours, experienced constant and severe abdominal pain, lost 24 pounds over a period of nine months, would be absent more than four days per month due to her impairments, and was "sedentary" due to generalized weakness. AR 705. Thus, it is unclear whether Plaintiff was limited in her ability to sit, stand, or walk, as

17- Opinion and Order

FNP LaPorte stated that Plaintiff was largely sedentary and severely impaired. The Court concludes that the ALJ should address this inconsistency on remand, as it went undiscussed in the present decision, and it presents considerable confusion in the overall interpretation of the record.

### D. Plaintiff's RFC

The RFC is the maximum that a claimant can do despite his or her limitations. 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC. *Lingenfelter*, 504 F.3d at 1041; *Osenbrock,* 240 F.3d at 1163-65.

Plaintiff argues the ALJ's assessed RFC fails to capture the extent of her functional limitations. Given the ALJ's legally insufficient refutation of Plaintiff's subjective symptom testimony, FNP LaPorte's opinion, and the lay witness testimony of Thomas R., the ALJ's RFC is not supported by substantial evidence.

### E. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Although the ALJ erred in several respects, there are outstanding issues in this case that must be resolved. On remand, the ALJ must: (1) determine whether to accept or reject Plaintiff's subjective symptom testimony and, if applicable, provide valid rationales; (2) resolve the ambiguities in the medical evidence; and (3) provide sufficient reasons, if applicable, to accept or reject the lay witness testimony of Thomas R. The ALJ should pay particularly close attention to the inconsistencies expressed in FNP LaPorte's opinion, such as limiting Plaintiff to less than sedentary work, yet declining to limit her ability to stand, walk, or sit.[5] The ALJ should then

---

[5] If possible, FNP LaPorte should clarify whether Plaintiff is a malingerer. While the Court declines to affirm the ALJ's rejection of FNP LaPorte's opinion and Plaintiff's subjective testimony solely based on an equivocal response regarding possible malingering, thoughtful resolution of the issue is potentially of great import to the overall interpretation of the record. *See Reed v. Massanari*, 270 F.3d 838, 941 (9th Cir. 2001) (the ALJ has a broad duty to develop the

19- Opinion and Order

formulate Plaintiff's RFC, and accommodate those limitations that are supported by substantial evidence. Such proceedings will serve a useful purpose by resolving ambiguities and inconsistencies in the record and, as such, the Court exercises its discretion to remand the case. *See Dominguez*, 808 F.3d 407-408.

## CONCLUSION

The Commissioner's decision finding Plaintiff not disabled was not supported by substantial evidence. The Commissioner's decision denying Plaintiff's application for DIB is REVERSED and REMANDED for further proceedings consistent with this Opinion.

**IT IS SO ORDERED**.

DATED this 18th day of September, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

record); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (the ALJ is responsible for resolving ambiguities in the record). Therefore, on remand, the ALJ should make reasonable efforts to contact FNP LaPorte for clarification on her equivocal statement, and possibly the inconsistencies in FNP LaPorte's opinion.